PER CURIAM.
This proceeding stems from an amendment to the Charlotte County comprehensive plan, enacted to accommodate a proposed Development of Regional Impact (DRI) called “Caliente Springs.” The developer, Caliente Partnership, seeks a writ of prohibition based on its belief that the Department of Community Affairs (DCA) is barred by statute from contesting the amendment.[1] We have jurisdiction. See State of Florida, Department of Community Affairs v. Escambia County, 582 So.2d 1237 (Fla. 1st DCA 1991).
Pursuant to section 163.3184(8)(b), Florida Statutes (1991), DCA has 45 days from receipt of formally adopted amend *887 ments to a comprehensive plan to determine whether those amendments are in compliance with the Growth Management Act. DCA must issue notice of its intent within the same 45-day window. “Issuance” occurs by publication in a newspaper of general circulation within the affected county and by mail to the local government and anyone else requesting notice. In the present case DCA has expressed its intent to find the amendment not in compliance. However, according to the petition, that notice came two days late. The respondent has held that the 45-day limit is not jurisdictional and that the statute does not explicitly provide for approval by default of plan should DCA fail to meet the timeliness requirements. We agree.
Our decision to deny relief by prohibition hinges in part upon the fact that Caliente’s claim of untimeliness is not undisputed. The respondent has concluded that unresolved factual questions exist as to the exact date Charlotte County’s transmittal of necessary documents became complete. Without clear evidence of an absence of subject matter jurisdiction, the extraordinary remedy of prohibition is not justified. Southern Neurosurgical Associates, P.A. v. Fine, 591 So.2d 252 (Fla. 4th DCA 1991).[2]
Even in the absence of this factual controversy, however, we would be disinclined to intervene at this juncture. Although section 163.3184(8)(b) is indeed strongly worded, employing at all significant points the word “shall,” it does not necessarily follow that Caliente should benefit from departmental inaction. Explicit “default” provisions, which can be found in some other regulatory statutes, are absent from section 163.3184(8)(b).[3] Furthermore, DCA’s obligatory decision under the statute does not put an end to the compliance question. Instead, their decision then triggers the right of “affected parties” to petition for an administrative hearing. See §§ 163.3184(9), (10).
There is ample reason to conclude that the legislature, when drafting Florida’s growth management laws, intended heightened public scrutiny of and participation in future land use decisions. See § 163.-3181(1), Fla.Stat. (1991). And see Benson v. City of Miami Beach, 591 So.2d 942 (Fla. 3d DCA 1991), rev. denied, 601 So.2d 551, 601 So.2d 553 (Fla.1992), wherein the court found insufficient publication of the notice required by § 163.3184(15)(c) because too few residents of Dade County could be expected to have read the newspaper in question. Moreover, case law suggests the difficulty, if not the impossibility, of citizen intervention before formal publication of DCA’s intent. Friends of the Everglades, Inc. v. State Department of Community Affairs, 495 So.2d 1193 (Fla. 3d DCA 1986), rev. denied, 506 So.2d 1041 (Fla.1987). Because the legislature appears to have placed a premium on both wise land use decisions and public input, “default approval” is too harsh a sanction for noncompliance with the statute.[4]
*888 The question thus arises, why the statute is worded as it is. Perhaps the legislature, contrary to the interpretation we announce here, did in fact intend “approval by default.” If so, one possible sanction would be the exclusion of DCA from whatever administrative proceedings may be requested following its action (or inaction) under subsection (8). Subsection (8) does, in fact, prescribe the specific sanction of divestiture of DCA’s authority to reject a plan or plan amendment. However, this occurs only when DCA fails to participate, despite a request from the affected local government, in the public hearing required by subsection (7). Otherwise the statute is silent on specific remedies and we decline to fashion one. Less drastic methods, such as mandamus, exist to compel DCA to make a prompt — if not a specific — decision. Kloski v. Matecumbe Marina, Inc., 598 So.2d 275 (Fla. 3d DCA 1992); Broward County Human Rights Board v. Rimon Apartments, 526 So.2d 773 (Fla. 4th DCA 1988).
Petition denied.
PARKER, A.C.J., and PATTERSON and BLUE, JJ., concur.

. Respondent J. Lawrence Johnston is a hearing officer with the Division of Administrative Hearings, assigned to resolve the dispute between Charlotte County and DCA. See § 163.-3184(9), Fla.Stat. (1991). Alternatively, Caliente seeks a writ of certiorari. Because there is a remedy by plenary appeal and no “irreparable injury" is alleged apart from the expense of further hearings, certiorari is not justified. See Whiteside v. Johnson, 351 So.2d 759 (Fla. 2d DCA 1977).

. Analogy may be drawn to the defense of statute of limitations. Where crucial facts regarding dates or times are in dispute, resolution of this question by summary judgment or dismissal is viewed with disfavor. See, e.g., Aprile v. Suncoast Schools Federal Credit Union, 596 So.2d 1290 (Fla. 2d DCA 1992); Lago West 84, Inc. v. Homoc Barnes, Inc., 486 So.2d 64 (Fla. 4th DCA 1986).

. See, e.g., § 120.60(2), Fla.Stat. (1991). Even here, since some public participation in permitting decisions is authorized, it should be emphasized that "default" does not signify an unfettered right to a permit upon the lapse of time limitations. See ManaSota-88, Inc. v. Agrico Chemical Co., 576 So.2d 781 (Fla. 2d DCA 1991).

. An overview of the somewhat labyrinthine plan approval process does belie any claim that the public has no voice until after DCA has made its final decision. No plan or amendment can issue from the local government without a public hearing. §§ 163.3184(3)(a); 163.-3184(15)(b). The plan then travels to DCA for “intergovernmental review” during which time numerous agencies may submit comments. §§ 163.3184(4), (5), and (6). Next, the plan, with any agency comments, returns to the local government for further consideration and (if so voted) formal adoption, again after public hearing. § 163.3184(7). Only then do the "notice of intent” provisions discussed in this opinion apply. However, we believe the administrative hearing represents a level of involvement qualitatively different from what occurs at a "public hearing" where anyone is free to speak. Many of the comments received by the local government will be more political than legal in nature, whereas litigants raise legally unsubstantiated objections at their peril.